748 P.2d 401

**In the Matter of the Suspension of the Driver's License of Donald CLAYTON, Defendant.**

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Donald CLAYTON, Defendant–Appellant.**

**No. 16759.**

Supreme Court of Idaho.

Jan. 7, 1988.

Dan J. Rude, Esq., Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

HUNTLEY, Justice.

In this case we must rule whether a police officer's conduct leading to an arrest for driving while intoxicated violated Donald Clayton's fourth amendment rights, and whether Clayton implicitly consented to an evidentiary test by being in actual physical control of his motor vehicle within the meaning of I.C. § 18–8002. For reasons explained below, we affirm.

In the early morning hours of December 13, 1985, a Coeur d' Alene Police Officer, Mike Moser, observed a vehicle in a parking lot adjacent to a bar. The vehicle's engine was running and the headlights were on, and an individual, later identified as Clayton, was sitting in the driver's seat behind the steering wheel with his head slumped forward. Officer Moser testified he decided to approach the vehicle to determine whether the person was in need of medical attention, asleep or intoxicated.

Officer Moser opened the driver's side door, reached in, turned the motor off, and took possession of the keys. He then attempted to arouse Clayton by speaking to him loudly and shaking him. After several minutes, Clayton awoke and began talking, but Officer Moser was unable to distinguish any coherent speech. He testified that "all that came out was gibberish." Based on the location of the vehicle, the time of day and Clayton's conduct, Officer Moser suspected intoxication.

After a brief period, Clayton seemed to wake up, and hurriedly got out of the car, but had trouble maintaining his balance. At that time, Officer Moser first noticed the odor of alcohol. Clayton was placed under arrest and transported to the Kootenai County Sheriff's Office, where he was requested to take an evidentiary blood test. Clayton refused and his driver's license was seized pursuant to I.C. § 18–8002(4). After a show cause hearing before a magistrate, Clayton's driving privileges were suspended and he appealed to the district court. The district court, acting in an appellate capacity, affirmed the suspension. Clayton now brings this appeal.

■ The first issue is whether Officer Moser's conduct in performing his investigation complied with Clayton's fourth amendment right to be free from unreasonable searches and seizures. First, we note that the officer acted reasonably in investigating the situation. When he observed the vehicle with its motor running, lights on, and the driver slumped forward, he had a duty as a police officer to investigate as stated in Cady v. Dombrowski, 413 U.S.

433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973):

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

Here, at 1:30 in the morning, the vehicle was in a parking lot with its lights on and motor running, with the driver slumped forward. Tested upon practical considerations of everyday life on which reasonable persons act, this situation falls outside the boundaries of normal conduct. The driver could have been hurt or sick, and in need of medical attention. Officer Moser acted prudently and satisfied his caretaking function when investigating the vehicle.

■ Nevertheless, Clayton contends a search occurred when the officer removed the keys from the vehicle, because at that time, he, even if he so desired, could not have left the scene. We disagree. Officer Moser's actions were consistent with his caretaking function. It is reasonable to assume that he acted out of concern for Clayton's safety in securing the vehicle.

In any event, even if Officer Moser's actions amounted to a seizure within the meaning of the fourth amendment, sufficient probable cause existed to conclude that the removal of the keys was reasonable under the circumstances. Our Court of Appeals has discussed the Fourth Amendment standards applicable to seizures in *Mason v. State Department of Law Enforcement,*

103 Idaho 748, 653 P.2d 803 (Ct.App.1982). There, Mason contended that his arrest for DUI was tainted by an unlawful seizure of his person because he was initially detained and asked to perform field dexterity tests. The Court set out the standards for permissible seizures:

> It is true that whenever a police officer accosts an individual and restrains his freedom to walk away—even briefly— the officer has 'seized' that person. *Terry v. Ohio*, 392 U.S. 1, 16, 688 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). However, such a 'seizure' is permissible under the Fourth Amendment if it is reasonable. *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). An investigatory stop, such as occurred here, in order to be reasonable and permissible, 'must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in a criminal activity.' *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). The sufficiency of cause justifying an investigatory stop depends upon the totality of the circumstances. Based upon the 'whole picture,' the detaining officer must have a particularized and objective basis for suspecting the person stopped of criminal activity. *Id.* at 417–18, 101 S.Ct. at 695.

> *Mason v. State Department of Law Enforcement, supra*, 103 Idaho at 750, 653 P.2d at 805 (Ct.App.1982).

A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be reasonable in light of the facts known to the officer at the time. *Terry v. Ohio, supra*, 392 U.S. 1 at 21–22, 88 S.Ct. at 1879–1880. It is clear that, under the instant circumstances, there was a sufficient and objective basis for Officer Moser to further investigate Clayton for a possible DUI violation. Thus, the removal of the keys was permissible. *See also, Wibben v. N.D. State Highway Commissioner*, 413 N.W.2d 329 (N.D. 1987) (State's interest in determining whether person in control of automobile was intoxicated, before person had opportunity to actually drive in an intoxicated state, outweighed person's Fourth Amendment interest in being left alone, and thus officer's investigative stop of person sitting in car in parking lot at 2:35 a.m. was not unreasonable.).

■ The next issue raised by Clayton is whether he was "in actual physical control" of his automobile as defined by I.C. § 18–8002(7). This section defines "actual physical control" as "being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving." Clayton argues that he was not in the driver's position because he was slumped over the steering wheel and unconscious. We disagree.

At the outset we note that Clayton did not consent to a evidentiary test for alcohol. I.C. § 18–8002(1) states that any person who "is in actual physical control of a motor vehicle in this state shall be deemed to have given consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances...." Clayton is contesting whether he has implicitly consented to a blood-alcohol test. The issue here differs from that addressed in *State v. Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987). There, we articulated seven instances in which a driver who has implicitly consented to an evidentiary test for blood alcohol may have his or her driver's license reinstated despite a failure to submit to a test. These seven instances are inapplicable here, because Clayton's challenge focuses on the issue of whether consent has been given.

I.C. § 18–8002(7) requires the defendant to be in the driver's position. Here, Clayton was sitting in the driver's seat behind the steering wheel with the engine running and the lights on. Any time an intoxicated person assumes this position, the public safety and welfare may be threatened, should he determine to operate the vehicle. I.C. § 18–8002 was enacted to discourage the intoxicated driver from attempting to operate a motor vehicle and, as such constitutes a proper exercise of the police power. The circumstances of this case fully justi-

fy the actions taken by Officer Moser pursuant to the statute. This interpretation of the meaning of the statute's requirement of "actual physical control" of the vehicle comports with the decision of other courts interpreting similar statutes. *See Adams v. State,* 697 P.2d 622 (Wyo.1985); *State v. Taylor,* 203 Mont. 284, 661 P.2d 33 (1983); *Lathan v. State,* 707 P.2d 941 (Alaska App. 1985); and *Mason v. State,* 603 P.2d 1146 (Okla.Cr.1979). Therefore, Clayton's driver's license suspension is affirmed.

Costs to respondent.

No attorney fees on appeal.

SHEPARD, C.J., and BAKES and BISTLINE, JJ., concur.

DONALDSON, J., did not participate due to his untimely death.

BISTLINE, Justice, specially concurring.

There is an interesting aspect to this case which is not addressed in the Court's opinion. Without doubt officer Mike Moser was absolutely in the right in checking out the whys and wherefores of a parked motor vehicle one and one-half hours after midnight on (presumably) a cold winter night, the engine running and the apparent driver in a slumped position. The officer was equally in the right in the procedures which he took. In that regard the factual situation presented is reminiscent of that presented in *Ransom v. Garden City,* 113 Idaho 202, 743 P.2d 70 (1987), where the officer arrested the intoxicated driver, but in an exercise of poor judgment entrusted the keys to another intoxicated person who subsequently drove it and caused innocent people great injury.

My opinion in that case quoted approvingly from the opinion of Justice Shaw of the Florida Supreme Court. His remarks are worth repeating here:

> Assuming as we must in the posture of the case, that Willard was intoxicated, the deputy sheriff was faced with the purely ministerial alternatives of taking custody of Willard by an arrest or, with appropriate instructions and safeguards, placing him in the custody of a responsible person, such as a friend, family member, or commercial taxicab driver who could provide safe transportation and prevent injury to others. *The viable alternatives did not include leaving Willard behind the wheel of his vehicle where he posed an imminent threat to the public.*
>
> *Everton v. Willard,* 468 So.2d 936 (Fla.1985), quoted in *Ransom v. Garden City,* 743 P.2d at 80, 113 Idaho at 222.

At the same time as the arrest option is considered by an officer in the situation encountered by Mike Moser, equal consideration might be given to the probability that the driver, realizing his state of intoxication and his threat to the public, exercised good judgment in getting off the highway, as he had done. Far better that the driver did that than to have continued trying to make it home before he got arrested. In a proper circumstance an officer might consider the other options suggested by Justice Shaw, i.e., "with appropriate instructions and safeguards, placing him in the custody of a responsible person, such as a friend, family member, or commercial taxicab driver who could provide safe transportation and prevent injury to others." For certain it is a judgment call as to which option should be taken. Drivers should not be discouraged from pulling over and sleeping it off when they recognize that they are too intoxicated, or somewhat intoxicated and drowsy, to remain in control.