826 P.2d 478

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robert GODWIN, Defendant–Appellant.**

**No. 18291.**

Court of Appeals of Idaho.

Feb. 5, 1991.

Petition for Review Granted April 3, 1991.

518

Hollis J. Anderson, Wallace, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent. Myrna A.I. Stahman argued.

WINMILL, Judge, Pro Tem.

This is an appeal from a judgment of conviction entered following a conditional plea of guilty in which the appellant, Robert Godwin, reserved the right to appeal the decision of the district court denying his motion to suppress evidence obtained by a police officer during an inventory search of Godwin's car following his arrest for driving while suspended. The sole issue on appeal is whether the district court properly held that a police officer who lacks probable cause to make a traffic stop, but who otherwise has valid reasons for approaching a stopped vehicle, may request a driver's license and conduct a record check without violating the driver's Fourth Amendment rights. We affirm.

The facts of this case began during the late evening hours of April 14, 1989, when Officer Chris Yount, of the Idaho State Police, stopped a vehicle driven by Alicia Whitifield because of an equipment violation. As Officer Yount contacted Ms. Whitifield, another vehicle, operated by Godwin, stopped on the highway approximately 100 yards ahead. While Yount was conversing with Whitifield, Bonner County Deputy Sheriff Todd Barbieri happened to drive by and, upon seeing the situation, activated his rear deck lights and pulled in behind Godwin's vehicle. Deputy Barbieri notified dispatch that he was making a "motorist assist."

As Deputy Barbieri exited his vehicle, he was told by Officer Yount that Whitifield believed her driver's license was in her purse which was in Godwin's vehicle. Deputy Barbieri approached Godwin's vehicle and was told that Godwin was following Whitifield to her residence because she had been having problems with her vehicle. Godwin located Whitifield's purse, but neither Godwin nor Barbieri were able to find her driver's license. Deputy Barbieri then asked Godwin for his driver's license, and Godwin gave him a Washington license. Deputy Barbieri returned to his vehicle and conducted a driver's license check. Dispatch shortly thereafter notified him that Godwin's license had been suspended by the State of Washington.

Because Deputy Barbieri had never dealt with such a situation, he requested assistance from Officer Yount. Officer Yount then spoke with Godwin about the status of his license and subsequently arrested him for driving with a suspended license.

After Godwin's arrest, Deputy Barbieri did an inventory search of Godwin's vehicle.[1] When Deputy Barbieri looked under the front seat he found three plastic bags. The first contained a white powdery substance, the second held a number of bindles, and the third contained a green leafy substance. The powdery substance and bindles field-tested positive for cocaine.

Godwin was charged with possession of cocaine with intent to deliver. Counsel for Godwin filed a motion to suppress the evidence obtained during the inventory search. The district court denied Godwin's motion, holding that the request for Godwin's driver's license and subsequent record check were reasonable. The charges against Godwin were subsequently reduced to possession of cocaine, and he entered a conditional plea of guilty, reserving the right to pursue this appeal from the district court's denial of his motion to suppress.

■ Preliminarily, we note the standard of review in appeals from a decision denying a motion to suppress. We defer to factual findings of the trial court unless they are clearly erroneous. Here, the facts are essentially undisputed, and we therefore undertake a free review of the trial court's determination as to whether constitutional requirements have been satisfied in light of those undisputed facts. *State v. Bainbridge*, 117 Idaho 245, 787 P.2d 231 (1990); *State v. Limberhand*, 117 Idaho 456, 788 P.2d 857 (Ct.App.1990).

■ We have previously held in *State v. Reed*, 107 Idaho 162, 686 P.2d 842 (Ct. App.1984), that a request for proof of insurance during a valid traffic stop does not constitute a "search" and does not intrude upon a legitimate privacy interest protected by the Fourth Amendment. Today, we are asked to decide the analogous question of whether a request for a driver's license and a subsequent record check, during an otherwise valid police-driver contact not involving a traffic stop, violates the driver's Fourth Amendment rights.[2] We conclude it does not.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....

However, not every warrantless and non-consensual search is prohibited. The ultimate test for judging the police conduct is whether the police officer's actions satisfied the constitutional requirements of reasonableness. *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). However, the reasonableness of an officer's conduct must be measured against the function and purpose of the intrusion. In the context of police-citizen contact involving automobiles, police have a community caretaking function, unrelated to the investigation of criminal activity, which requires that they be allowed some leeway in responding to automobiles which are disabled, involved in accidents, or merely stopped on the highway. *Id.; Matter of Clayton*, 113 Idaho 817, 748 P.2d 401 (1988). In such cases, the reasonableness of the police officer's discharge of this community caretaker function is judged by balancing the nature of the intrusion on the individual's Fourth Amendment right of privacy against the public need and governmental interest promoted by the police conduct. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

■ Here, Deputy Barbieri testified that there were two reasons he contacted the driver of the vehicle. He believed he need-

---

1. The inventory was completed using the standard form used for impound inventories, and the appellant is not challenging the validity of the procedures followed.

2. At the time Deputy Barbieri asked Godwin to produce his driver's license, I.C. § 49–316 provided:

    Every licensee shall have his operator's or chauffeur's license in his immediate posses-sion at all times when operating a motor vehicle and shall, upon demand, surrender the license into the hands of a peace officer for his inspection.

    An apparent purpose of this statute is to permit law enforcement personnel to determine that only licensed drivers are operating motor vehicles in Idaho.

ed to determine if a motorist stopped on the highway required assistance, and he was somewhat concerned for the safety of Officer Yount because he believed the two vehicles may have been traveling together. There are several reasons for permitting a police officer to ask for a driver's license under these circumstances. In making any stop, whether the stop is to enforce the traffic laws or to carry out the officer's community caretaker function, an officer should be allowed to identify, with certainty, the person with whom he is dealing. This is necessary to protect himself and other officers from danger, to accurately prepare any required reports concerning his contact with the motorist, and to allow the officer to adequately respond to allegations of illegal conduct or improper behavior. Moreover, where it was determined that the person traveling with Godwin was operating her car without a driver's license, it was appropriate to determine whether Godwin had a driver's license and whether it was valid.

There is also a valid public interest in permitting a police officer to run a record check on a driver's license under these circumstances. The need to identify the person with whom a police officer is dealing would logically extend to making a *correct* identification and determining the validity and status of the driver's license upon which the identification is based.

Even if there is a legitimate public interest in requesting a driver's license and running a status check under the circumstances presented here, that interest must outweigh the nature of the intrusion in order to pass the Fourth Amendment test of reasonableness. We note, however, that the intrusion here was minimal. Godwin was already stopped at the roadside when Deputy Barbieri arrived. The officer's initial contact with Godwin was to determine whether he had Whitifield's driver's license. His further request for Godwin's license and his check on the status of that license constituted a very limited further encroachment upon any privacy interest protected by the Fourth Amendment. We therefore have little difficulty in concluding that such a limited intrusion was out-

weighed by the substantial public interest which supported Deputy Barbieri's conduct. This view is consistent with a uniform body of court decisions in other states that a police officer who has made an otherwise appropriate contact with a motorist, may request the motorist's license and run a check on that license without violating the driver's Fourth Amendment rights. *See, e.g., State v. Ellenbecker,* 464 N.W.2d 427 (Wis.Ct.App.1990); *State v. Woods,* 102 Or.App. 671, 796 P.2d 1209 (1990), *review denied,* 310 Or. 422, 799 P.2d 151 (1990); *State v. Aguinaldo,* 71 Hawaii 57, 782 P.2d 1225 (1989); *State v. Thornton,* 62 Or.App. 468, 661 P.2d 555 (1983); *State v. Tourtillott,* 289 Or. 845, 618 P.2d 423 (1980); Annot., 6 A.L.R.3d 506 (1966). *See generally Matter of Clayton, supra; State v. Reed, supra.*

Because the officer's request for Godwin's license and his subsequent record check pass the Fourth Amendment's test of reasonableness, we conclude that the district court did not err in denying Godwin's motion to suppress the evidence obtained during the inventory search of his car. Accordingly, we affirm the judgment of conviction.

WALTERS, C.J., and SWANSTROM, J., concur.