826 P.2d 481

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dwight K. OSBORNE, Defendant–Appellant.**

No. 18568.

Court of Appeals of Idaho.

Dec. 3, 1991.

Petition for Review Denied March 27, 1992.

Daniel P. Featherston, Sandpoint, argued for appellant.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent. Myrna A.I. Stahman argued.

WALTERS, Chief Judge.

Dwight Osborne was convicted of driving under the influence based on evidence obtained when patrol officers approached his parked vehicle and asked to see a driver's license. The dispositive issues raised on appeal concern the point at which the encounter between the officers and Osborne became a "seizure" within the meaning of the fourth amendment, and whether the seizure was "reasonable." For the reasons explained below, we vacate the judgment of conviction and remand the case to the magistrate.

I

## FACTS AND PROCEDURAL BACKGROUND

On March 4, 1989, at approximately 2:15 in the morning, Bonner County patrol officers noticed a pick-up truck parked along the road in front of Idaho Hill School, in Oldtown, Idaho. The officers saw Osborne standing behind the truck and a female sitting in the passenger's seat. The truck's engine was running and the driver's door was open. Earlier that evening the officers had received a report of someone

shooting out lights at a nearby lumber yard. The school is situated on a hill overlooking the lumber yard, approximately three hundred feet away. There also had been reports, some months earlier, of children playing on the school's roof. The officers drove toward the vehicle and pulled in behind it. By this time Osborne had entered the driver's side of the truck and closed the door.

One of the officers, Deputy Chris Costello, walked up to Osborne and asked to see his driver's license. Costello obtained the license and returned with it to the patrol car to run a radio check. He informed his partner, Deputy Steve Barbieri, that he had detected the smell of an alcoholic beverage and suggested Barbieri investigate. Barbieri, too, noticed the odor when he approached the truck. He asked Osborne to step out of the cab in order to ascertain whether Osborne, as opposed to the passenger, had been drinking. When Osborne exited his vehicle, Barbieri smelled alcohol on his breath and also observed that Osborne's eyes were red and glassy. Barbieri requested Osborne to perform a series of field sobriety tests. Based upon his observations, Barbieri arrested Osborne for driving under the influence of alcohol. The officers then searched the truck and discovered several small plastic bags of marijuana and a pipe.

Based upon this evidence, the state charged Osborne with driving under the influence, I.C. § 18–8004; possession of marijuana, I.C. § 37–2732(c)(1); and possession of paraphernalia, I.C. § 37–2734A. Osborne moved to suppress, contending that the initial police encounter was an unreasonable seizure and that the evidence subsequently obtained should have been excluded as tainted fruit. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Deputy Barbieri was the only witness called to testify at the suppression hearing. The magistrate denied the motion, concluding that there existed a reasonable basis for the initial, limited contact that led to the arrest. Pursuant to a plea agreement, the possession charges were dismissed and Osborne entered a conditional plea of guilty to driving

under the influence, expressly reserving his right to challenge the ruling on the suppression motion. I.C.R. 11(a)(2). The district court upheld the magistrate's decision. Osborne appeals.

Our inquiry on appeal consists of two parts. First, we must determine at what point during the encounter Osborne was seized. We then consider whether, under the facts and circumstances at that time, the seizure was reasonable. Because neither party disputes the facts, we exercise free review in determining whether the police encounter was one permitted under the fourth amendment of the constitution. *State v. Shepherd*, 118 Idaho 121, 795 P.2d 15 (Ct.App.1990).

## II

### WHEN WAS OSBORNE "SEIZED"?

A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking him if he is willing to answer some questions, or by putting questions to him if he is willing to listen. *Florida v. Bostick*, —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Unless and until there is a detention, there is no seizure within the meaning of the fourth amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498, 103 S.Ct. at 1324. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Florida v. Rodriquez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Thus, where an officer merely approaches a person who is standing on the street, or seated in a non-moving vehicle located in a public place, and poses a few questions, no seizure has occurred. *See United States v. Castellanos*, 731 F.2d 979 (D.C.Cir.1984); *United States v. Woods*, 720 F.2d 1022 (9th Cir.1983). This is so because the person

approached need not answer any question put to him and may decline to listen to the questions at all and go about his business. *See Royer,* 460 U.S. at 497–98, 103 S.Ct. at 1324. Thus, in determining whether an individual is "seized" within the meaning of the fourth amendment, the critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."[1] *Bostick,* — U.S. at —, 111 S.Ct. at 2387, *quoting Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988).

Applying these principles to the case before us, we easily conclude that no seizure had occurred at the time the police pulled in behind Osborne's vehicle, which already was stopped on a public street.[2] Nor did the officers intrude upon any constitutionally-protected right by walking up to the Osborne vehicle. The situation was quite different, however, once Deputy Costello asked to see Osborne's driver's license. By virtue of a state statute, Osborne—who was in the driver's seat of a vehicle with its engine running—was *required* to respond to the officer's request and surrender his driver's license. *See* I.C. § 49–316.[3] Moreover, this same statute *re-*

*quired* that Osborne have his license "in his immediate possession at all times when operating a motor vehicle." Osborne was legally obligated to comply with the officer's request and could not drive away without violating the law. Under these circumstances, we hold as a matter of law that Osborne could not reasonably have believed he was "at liberty to ignore the police presence and go about his business." *Accord United States v. Thompson,* 712 F.2d 1356 (11th Cir.1983); *State v. Painter,* 296 Or. 422, 676 P.2d 309 (1984). *Compare, e.g., United States v. Campbell,* 843 F.2d 1089 (8th Cir.1988) (police retention of used one-way airline ticket not determinative of whether seizure occurred). Accordingly, we conclude that Osborne was "seized" within the meaning of the fourth amendment when Deputy Costello took his license.[4]

## III

## WAS THE SEIZURE "REASONABLE"?

Having determined the point at which Osborne was seized, we next must decide whether a seizure at that time was "reasonable." The reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against an "objective standard," whether this be probable

---

1. Circumstances distinguishing a fourth amendment seizure from other police-citizen encounters include pursuing a person who has attempted to terminate the conduct by departing, calling to such a person to halt, holding the person's identification papers or other property, blocking the path of the suspect, and encircling the suspect by many officers. W. LaFAVE, SEARCH AND SEIZURE § 9.2(h), at 413–14 (2nd ed. 1987).

2. In his argument on this appeal, Osborne contended that he was stopped on a dead-end road and the position of the police vehicle blocked his only means of exit. The record, however, is devoid of any evidence on this point. We have before us no map or drawing of the street, nor does the testimony describing the positioning of the vehicles substantiate Osborne's contention. An appellate court is not the place for factual assertions; factual assertions must be made and proved before the trial court. *State v. Camarillo,* 116 Idaho 413, 775 P.2d 1255 (Ct.App.1989). We are restricted by the record below and there-

fore we do not consider this newly-introduced fact on appeal.

3. Idaho Code § 49–316 provides, in pertinent part,

   Every licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle and *shall, upon demand, surrender the driver's license into the hands of a peace officer for his inspection.* [Emphasis added.]

4. A somewhat similar factual situation was presented in *State v. Godwin,* 121 Idaho 517, 826 P.2d 478 (Ct.App.1991). In that case, however, the appellant contended that the officer's demand to see his driver's license was not a valid "search." No issue was raised as to whether the officer's request to see the license constituted a "seizure" of the driver. A petition for review of this Court's decision in *Godwin,* upholding the "search," was granted by the Idaho Supreme Court. Argument on that appeal was heard on October 8, 1991.

cause or a less stringent test. *Delaware v. Prouse*, 440 U.S. 648, 653–53, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979). A person may not be detained, even momentarily, without reasonable, objective grounds for doing so. *Royer*, 460 U.S. at 498, 103 S.Ct. at 1324.

### A. Licensing Check.

We first consider whether the detention was justified as an appropriate licensing check. Idaho Code § 49–316 mandates that every licensee possess a license while driving and that the driver "shall, upon demand, surrender the driver's license into the hands of a peace officer for his inspection." However, a field officer is not permitted to randomly stop motorists for the purpose of conducting routine license checks. As noted by the United States Supreme Court,

> To insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion "would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches."
>
> ....
>
> The "grave danger" of abuse of discretion does not disappear simply because the automobile is subject to state regulation resulting in numerous instances of police contact.... *"[I]f the government intrudes ... the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards."*

*Prouse*, 440 U.S. at 661–62, 99 S.Ct. at 1400, 59 L.Ed.2d 660 (1979) (emphasis added) (citations omitted).

Thus, in *Prouse*, the high court struck down the law enforcement practice of random license checks, concluding that the standardless and unconstrained discretion involved in such stops is incompatible with the fourth amendment's guarantees. It did so by holding that stopping an automobile and detaining its passengers for the purpose of checking the driver's license must, at least, be founded on an articulable and reasonable suspicion that the motorist is unlicensed, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law.[5]  *Id.* at 663, 99 S.Ct. at 1401.

Although the facts in *Prouse* involved a stop of a moving vehicle and the detention of its occupants, which may be more intrusive than detaining the passengers of a vehicle which is already stopped, we believe the reasoning is equally applicable. As recognized in *Prouse*, "people are not shorn of all Fourth Amendment protections when they step from their homes on to public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles." 440 U.S. at 663, 99 S.Ct. at 1401. In this case, the record is devoid of any showing that the officers believed Osborne was unlicensed or was—at the time the officers observed him—violating any law, or that the vehicle or either of its occupants otherwise were subject to seizure for violating a law. Thus, we cannot conclude that the detention was reasonable as a licensing check.

### B. Investigatory Detention.

Next, we consider whether the seizure was reasonable as an investigatory detention. Police may, in appropriate circumstances and in an appropriate manner, detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). For an investigatory stop or brief detention to be justified, law enforcement officials must be able to point to articulable and objective facts that the particular person being stopped or detained is suspected of criminal activity. *United States v. Cortez*,

---

**5.** The Court observed, however, that routine checks would be permissible under the federal constitution if a part of some systematic procedure which is less intrusive or which does not involve the field officer's unconstrained exercise of discretion. 440 U.S. at 663, 99 S.Ct. at 1401.

449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). Whether police possessed a reasonable suspicion to conduct an investigatory stop is determined by the totality of the circumstances. *Id.; State v. Johns,* 112 Idaho 873, 736 P.2d 1327 (1987). As noted above, the officers observed nothing to suggest that Osborne was engaged in any unlawful activity at the time they observed him. Our task, then, is to determine whether the factual basis articulated by the officers reasonably supports a suspicion that Osborne had just committed, or was about to commit, a crime.

In support of the detention, the officers relied on the report that "someone" had shot out the lights of the nearby lumber yard, located approximately three hundred feet from where Osborne was parked. Deputy Barbieri testified that he and Deputy Costello learned of the vandalism at nine or ten o'clock that evening. However, they received no description of the perpetrator or of any vehicle, nor did they know the location from which the shots had been fired. During the course of their patrol that evening, the officers had driven past the school approximately three times without seeing any vehicles. At 2:15 a.m.—four or five hours after the vandalism was reported—the officers noticed Osborne's vehicle. Aside from Osborne's presence on the public street, situated within a hundred-yard radius of vandalized property, the officers observed nothing to connect Osborne with past or imminent acts of vandalism. Although the officers believed shots could be fired at the lumber yard from the school, there is nothing to suggest that Osborne had been near the school four to five hours earlier when the shots were fired.

■ Deputy Barbieri also cited prior reports of children climbing on the school's roof as a basis for the officers' suspicion. However, Barbieri testified that when he initially observed Osborne, a man in his forties, he could see that he was not a child. Clearly, Osborne could not reasonably be suspected of the type of conduct complained of. Furthermore, the record indicates that the last of these reported incidents had occurred about two months earlier. We conclude that the facts possessed by the officers did not provide a sufficient quantum of suspicion to justify the detention.

### C. Community Caretaking Function.

■ Finally, we address the state's argument that the officers' conduct was within their "community caretaking function" and as such did not constitute a seizure in violation of Osborne's fourth amendment rights. We observe that virtually any time a field officer conducts an investigative detention, it may be said that the officer is acting on behalf, and for the protection, of the community. However, for the "community-caretaking function" analysis to apply, the officers' activity must be one that is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) (cited in *In re Clayton,* 113 Idaho 817, 748 P.2d 401 (1988)).

■ In this case, the magistrate court made no finding as to whether the officers' activities were within their community caretaking function. Nor would the evidence support such a finding if made. Nothing in the record remotely indicates that either officer believed Osborne needed automotive assistance or that either of them perceived a medical emergency or other exigency compelling their immediate action. *See State v. McAfee,* 116 Idaho 1007, 783 P.2d 874 (Ct.App.1989). To the contrary, Deputy Barbieri testified that it was the prior reports of vandalism in the area that had caused the officers to focus on Osborne. Upon this record, we reject the state's suggestion on appeal that the detention be upheld under the community caretaking function.

### IV

### CONCLUSION

We hold that Osborne was "seized" within the meaning of the fourth amendment at the time the police demanded his driver's

license. We further conclude that the seizure was not justified as a valid licensing check, nor did it comport with the requirements of an investigatory detention, nor can we uphold it as a lawful exercise of the officers' community caretaking role. Accordingly, the magistrate's denial of Osborne's motion to suppress must be reversed. The judgment of conviction is therefore vacated and the case is remanded for further proceedings.

SWANSTROM and SILAK, JJ., concur.