**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 47762**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | )   **Filed: June 9, 2021** |
|     **Plaintiff-Respondent,** | ) |
| | )   **Melanie Gagnepain, Clerk** |
| v. | ) |
| | )   **THIS IS AN UNPUBLISHED** |
| MONTEY CURTIS MOON, | )   **OPINION AND SHALL NOT** |
| | )   **BE CITED AS AUTHORITY** |
|     **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeffery D. Nye, Deputy Attorney General, Boise, for respondent.

———————————————

BRAILSFORD, Judge

Montey Curtis Moon appeals from his judgment of conviction for possession of a controlled substance, Idaho Code 37-2732(c)(1). On appeal, he challenges the district court's denial of his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officer Miller initiated a traffic stop at nighttime after observing a vehicle being driven without a rear license plate. He made contact with the driver and her two passengers and asked the driver for her license, proof of insurance, and registration. The driver was unable to provide any of the requested documents and gave Officer Miller a fictitious name.

Officer Miller observed the passengers were not wearing their seatbelts, and he asked them to identify themselves. The front seat passenger provided her name, but the back seat

1

passenger, later identified as Moon, identified himself falsely as Tyrone Eagle. Officer Miller ran record checks on all the occupants but was unable to identify either the driver or Moon based on their fictitious names. While running a records check, Officer Pokorny observed Moon making furtive movements in the back seat and alerted Officer Miller.

Officer Miller asked the driver to exit the car and told her that her identity did not match the name she provided. The driver admitted to providing false information because she did not have a valid driver's license; she then provided her actual name and an identification card; and she claimed to not know Moon, who she stated was dating her female passenger. Officer Miller asked the female passenger to exit the vehicle, and she likewise claimed she did not know Moon, but rather, she stated he was the driver's friend.

Officer Miller also informed Moon he could not identify him from the information he provided. Moon, however, continued to insist his name was Tyrone Eagle and provided a social security number. After Officer Miller and dispatch were still unable to identify Moon, Officer Miller asked Moon to exit the vehicle, handcuffed him, and told him he would be detained until his identity could be confirmed. While putting handcuffs on Moon, Officer Miller smelled marijuana on Moon's person and conducted a pat-down search of Moon, but did not find anything.

At that time, however, Officer Miller observed a cut and burnt straw in plain view in the back seat where Moon had been sitting and recognized the straw as drug paraphernalia. Thereafter, Officer Miller conducted a search of the vehicle and discovered additional paraphernalia including a broken, glass pipe; a plastic bottle fashioned as a bong; and a syringe. While Officer Miller was testing the paraphernalia for the presence of drugs, Officer Pokorny identified Moon by using the birthdate he provided and reviewing the photos associated with that date in a database until Officer Pokorny found a match.

As a result of this encounter, the State charged Moon with possession of methamphetamine and destruction of evidence and alleged he is a persistent violator. Moon moved to suppress the evidence found during the stop. At the suppression hearing, both Officer Miller and Officer Pokorny testified. Thereafter, the district court issued a written decision denying Moon's motion. The court ruled, among other things, that Officer Miller had reasonable suspicion to stop the vehicle and that, under the totality of circumstances, his frisk of Moon was justified.

After the district court denied Moon's suppression motion, he entered into a conditional guilty plea for possession of a controlled substance and reserved his right to appeal the denial of his motion. In exchange, the State dismissed the destruction of evidence charge and the persistent violator enhancement. The district court imposed a seven-year sentence, with three years determinate, and retained jurisdiction.

Moon timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Mindful that Officer Miller frisked Moon while still investigating his identity related to his seatbelt violation, Moon argues on appeal that Officer Miller's frisk unlawfully extended the stop's duration. A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498 (1983); *Terry*, 392 U.S. at 30; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133

3

Idaho at 479, 988 P.2d at 705. However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787.

Several factors influence whether a reasonable person in the officer's position would conclude a particular person was armed and dangerous. *State v. Bishop*, 146 Idaho 804, 818-19, 203 P.3d 1203, 1217-18 (2009). These factors include whether there were any bulges in the suspect's clothing resembling a weapon; whether the encounter took place late at night or in a high-crime area; and whether the individual made threatening or furtive movements indicating he possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous. *Id.* at 819, 203 P.3d at 1218. Whether any of these considerations, individually or collectively, are enough to justify a frisk depends on an analysis of the totality of the circumstances. *Id.*

Moon does not dispute Officer Miller had reasonable suspicion to stop the vehicle in which Moon was a passenger. Rather, he argues that "under the totality of circumstances, a reasonably prudent person in Officer Miller's position would not have been justified in concluding [Moon] presented a risk of danger." In particular, Moon relies on the district court's finding that "Officer Miller testified he was not fearful for his safety before he asked Moon to exit the car and conducted a pat down search." As a result, Moon contends the unwarranted frisk, which lasted approximately three minutes, unlawfully delayed the stop, and the district court erred by concluding otherwise.

Whether an officer unlawfully delayed a stop turns on whether the scope of the investigative detention was tailored to the underlying justification for the detention. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004). A detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Id.* In the context of traffic stops,

4

authority for the seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Such tasks include ordinary inquiries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). An officer may also require the occupants to exit the vehicle during a traffic stop. *Maryland* v. *Wilson*, 519 U.S. 408, 412 (1997). Further, this Court has held that when making a stop, an officer is allowed to identify with certainty the person with whom he is dealing. *State v. Godwin*, 121 Idaho 517, 519-20, 826 P.2d 478, 480-81 (Ct. App. 1991), *aff'd*, 121 Idaho 491, 826 P.2d 452 (1992); *see also State v. Reed*, 129 Idaho 503, 506, 927 P.2d 893, 896 (Ct. App. 1996) (holding officer entitled to ascertain driver's identity after reason for stop dissipated). "This is necessary to protect himself and other officers from danger, to accurately prepare any required reports concerning his contact with the motorist, and to allow the officer to adequately respond to allegations of illegal conduct or improper behavior." *Godwin*, 121 Idaho at 519, 826 P.2d at 480.

Even assuming Officer Miller's frisk in this case was not justified,[1] that frisk did not unlawfully delay the stop as Moon contends. The frisk occurred while Officer Miller and Officer Pokorny were attempting to determine Moon's true identity. The officers were allowed to identify Moon with certainty incident to the traffic stop, particularly because they were investigating his seatbelt violation. *See Godwin*, 121 Idaho at 495, 826 P.2d at 456 (referring to Court of Appeals' underlying decision). Because the frisk occurred while the officers were diligently pursuing a purpose of the stop to which reasonable suspicion related, the frisk did not unlawfully delay the stop. *See State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016) (ruling traffic stop remains reasonable seizure while officer diligently pursues purpose of stop to which reasonable suspicion relates); *State v. Renteria*, 163 Idaho 545, 549, 415 P.3d 954, 958 (Ct. App. 2018) (ruling questions about drugs and weapons in vehicle did not prolong stop because defendant was still searching for proof of insurance when officer posed questions).

---

[1] Determining whether Officer Miller's frisk was lawful is unnecessary to the resolution of Moon's appeal. For this reason, we do not address the lawfulness of the frisk. We do note, however, that the traffic stop occurred at night; both the driver and passenger denied knowing Moon; Moon refused to cooperate by repeatedly giving a fictitious name; and Officer Pokorny observed Moon making furtive movements in the back seat. These facts very well may have provided an objectively reasonable basis to frisk Moon, despite Officer Miller's subjective testimony that he was not fearful for his safety.

5

Rather, the traffic stop was extended due to Moon's refusal to identify himself, not because Officer Miller frisked him. *See DuValt*, 131 Idaho at 554, 961 P.2d at 645 (ruling officer did not unlawfully extend stop but rather "any extra length of time was due to [defendant's] own actions"). Moon has, therefore, failed to show the district court erred in denying his motion to suppress.

## IV.

## CONCLUSION

The district court properly denied the motion to suppress. Therefore, we affirm Moon's judgment of conviction for possession of a controlled substance.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.