**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47795**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed:  October 22, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| MELISSA MARIE WALKER, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael J. Reardon, District Judge.

Judgment of conviction for possession of a controlled substance and misdemeanor driving under the influence, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Melissa Marie Walker appeals from her judgment of conviction for possession of a controlled substance and misdemeanor driving under the influence (DUI).  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

During an early morning patrol through a residential neighborhood, an officer observed two vehicles parked on the roadside facing each other.  The officer also observed Walker move away from the vehicle parked facing against traffic and enter the other vehicle.  Without activating the patrol vehicle's overhead emergency lights, the officer parked on the opposite side of the street and exited his patrol vehicle.  Finding the illegally parked vehicle unoccupied, the officer approached Walker, who was sitting in the driver's seat of the other vehicle with the motor running.

1

While talking to Walker, the officer observed that Walker's eyes exhibited indicia of intoxication. The officer then requested identification from Walker and her two passengers. Walker said she did not have her wallet, but verbally provided her personal identifying information. Walker subsequently submitted to field sobriety testing, which indicated she was intoxicated. Walker also revealed she was in possession of controlled substances.

The State charged Walker with two counts of possession of a controlled substance and misdemeanor DUI. Walker moved to suppress "all the evidence gathered as a result of an illegal seizure," arguing that she was seized without reasonable suspicion when the officer requested her identification. The district court denied Walker's suppression motion, concluding that no constitutional violation occurred. Walker entered conditional *Alford*[1] pleas to one count of possession of a controlled substance, I.C. § 37-2732(c), and misdemeanor DUI, I.C. § 18-8004, preserving her right to appeal the denial of her suppression motion. In exchange for Walker's guilty pleas, the State agreed to dismiss the other count of possession of a controlled substance. Walker appeals.

## II.

## STANDARD OF REVIEW

Generally, the standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). However, when we have "exactly the same evidence before [us] as was considered by the district court," we will freely review and weigh the evidence in the same manner as the trial court. *State v. Andersen*, 164 Idaho 309, 312, 429 P.3d 850, 853 (2018).[2]

---

[1]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

[2]     At the suppression hearing, neither party presented testimony. Instead, the parties stipulated to the submission of the officer's on-body video as Exhibit 1. Both parties also

2

## ANALYSIS

Walker argues that the district court erred in denying her motion to suppress because she was seized without reasonable suspicion, in violation of the Fourth Amendment, "at the moment the officer requested her identification." Walker also argues that, under the circumstances, a reasonable person would not have felt free to disregard the police. The State responds that "Walker's argument fails because asking for identification did not effectuate a seizure." The State alternatively argues that, even if Walker was seized, the seizure was supported by reasonable suspicion of vehicle burglary and driving under the influence. We hold that Walker has failed to show she was unlawfully seized when the officer requested her identification or based on the circumstances surrounding the encounter.

The Fourth Amendment to the United States Constitution guarantees the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772-73, 839 P.2d 38, 39-40 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message

---

referenced the preliminary hearing transcript and made arguments based on it. Although the preliminary hearing transcript was not admitted as an exhibit at the suppression hearing, the district court expressly considered the parties' arguments based on it, and the preliminary hearing transcript has been included in the record on appeal as an exhibit. Both parties have also relied on the preliminary hearing transcript in their briefing before this Court.

that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.* The burden of proving that a seizure occurred is on the defendant seeking to suppress evidence obtained as a result of the allegedly unlawful seizure. *State v. Reese*, 132 Idaho 652, 654, 978 P.2d 212, 214 (1999).

The video from the officer's on-body camera, admitted as Exhibit 1 at the suppression hearing, shows that, at approximately 1 a.m., the officer approached the vehicle Walker was in and twice asked whether everything was "okay" after he saw Walker walking from one vehicle to the other. The officer then inquired about the illegally parked vehicle in front of Walker and asked Walker and her two passengers, "Do you guys have your I.D. on you?" to which Walker responded, "I don't even have my wallet." Thus, Walker could not provide the officer with identification. However, Walker advised the officer that she had a driver's license. After additional conversation between the officer and Walker about the ownership of the other vehicle and Walker's relationship to it, Walker provided the officer with her full name and date of birth and confirmed she had a "good driver's license."

Walker conceded at the suppression hearing that there was no constitutional concern with the officer "simply walking up and making contact with her in the car initially." Walker acknowledged that was "largely consensual contact," including the officer's initial questions asking whether everything was "okay." However, Walker argued she was seized when she was asked for identification.[3] Walker advances this same claim on appeal. This argument is contrary to United States Supreme Court and Idaho precedent holding that requesting and examining identification does not constitute a seizure under the Fourth Amendment. "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual," and "ask to examine the individual's identification." *Bostick*, 501 U.S. at 434; *see also State v. Phipps*, 166 Idaho 1, 8, 454 P.3d 1084, 1091 (2019); *Fry*, 122 Idaho at 102, 831 P.2d at 944.

Notwithstanding this authority, Walker argues that she was seized because the officer's conduct would have communicated to any reasonable person that the person was not free to leave.

---

[3] Walker also argued below that she was seized when the officer said, "hold on," but she does not pursue this argument on appeal.

4

In support of this argument, Walker relies on I.C. § 49-316 and that statute's application in *State v. Osborne*, 121 Idaho 520, 826 P.2d 481 (Ct. App. 1991). Idaho Code Section 49-316 provides, in pertinent part: "Every licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle and shall, upon demand, surrender the driver's license into the hands of a peace officer for his inspection."

This Court considered the implications of this statute during a consensual encounter in *Osborne*. In that case, officers walked up to a vehicle they suspected was involved in an incident in which the lights of a nearby lumberyard were shot out earlier in the night. One officer approached Osborne, who was seated in the driver's seat of the vehicle with the motor running. The officer requested Osborne's driver's license and retained it while conducting a license check. Further investigation resulted in Osborne's arrest for DUI and the discovery of drugs and drug paraphernalia in his vehicle. On appeal from Osborne's conditional guilty plea to DUI, this Court reversed the denial of Osborne's motion to suppress. Although we held that Osborne's initial encounter with police was consensual, we further concluded that the situation was "quite different" once officers asked for Osborne's driver's license, reasoning:

> By virtue of a state statute, Osborne--who was in the driver's seat of a vehicle with its engine running--was *required* to respond to the officer's request and surrender his license. *See* I.C. § 49-316. This same statute *required* that Osborne have his driver's license "in his immediate possession at all times when operating a motor vehicle." Osborne was legally obligated to comply with the officer's request and could not drive away without violating the law. Under these circumstances, we hold as a matter of law that Osborne could not reasonably have believed he was "at liberty to ignore the police presence and go about his business."

*Osborne*, 121 Idaho at 524, 826 P.2d at 485 (footnote omitted). Consequently, we held that Osborne was seized when officers "took his license." *Id.*

Walker contends that *Osborne* is "significant in that it recognized that the initially consensual contact became *non*consensual once the officer requested Osborne's license." According to Walker, "an individual seated as the driver of a running motor vehicle is *not* free, and reasonably should not feel free," to ignore an officer's request for identification and "go about her business or drive away" and that this "result should be the same regardless of whether the driver has physical possession" of a driver's license or no license at all. The State responds that

5

*Osborne* is distinguishable and, therefore, inapplicable. We agree that *Osborne* does not control the outcome of this case.

The officer in this case did not request Walker's driver's license. Rather, the officer asked Walker, as well as her two passengers, if they had identification. While a driver's license can be, and often is, used for purposes of identification, the officer did not ask Walker to produce her driver's license. Thus, unlike in *Osborne*, Walker was not "required" to "surrender" her driver's license pursuant to I.C. § 49-316. Walker seeks to avoid this distinction between her case and *Osborne* by arguing that the officer's request for identification rather than her driver's license did not "relieve" her of her "obligation, imposed by the licensing statute, to respond to the officer's request." Walker, however, cites no authority for this proposition, nor does she acknowledge the plain language of the statutory obligation upon which she relies for her Fourth Amendment claim. The language of the statute is to be given its plain, obvious, and rational meaning. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). The plain language of I.C. § 49-316 only requires surrender of a "driver's license" upon "demand" by a peace officer. In this case, there was no demand, much less a demand for a "driver's license." Walker's reliance on her obligation under I.C. § 49-316 as a basis for the alleged seizure is misplaced.

Walker also argues that "no *reasonable* person seated as a driver in a running car would believe that an officer's request for her I.D. was *not* a request for proof of a valid driver's license." This argument ignores the previously stated and well-established principle that requesting and examining identification does not constitute a seizure under the Fourth Amendment. *See Bostick*, 501 U.S. at 434-35; *Phipps*, 166 Idaho at 8, 454 P.3d at 1091; *Fry*, 122 Idaho at 102, 831 P.2d at 944. We do not read *Osborne* as overriding that principle, established by the United States Supreme Court, nor could this Court have done so absent a state constitutional basis for granting greater protections related to the Fourth Amendment. *See California v. Greenwood*, 486 U.S. 35, 43 (1988) (explaining that, while "[i]ndividual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution," it does not alter the Fourth Amendment). Further, that Walker or others might respond to a request for identification by producing a driver's license does not convert the request into a demand pursuant to statute. *See Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984) (explaining that, "while most citizens will respond to a police request, the fact that people do so,

6

and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response").

Finally, Walker argues that "additional circumstances surrounding the encounter" support her assertion that she was not free to leave. Walker identifies these circumstances as the time ("late and night"); the lack of "other persons in the area when the officer drove up and parked, and walked over" to her; and the officer's "tone of voice" and "plainly accusatory" questioning. Circumstances that might indicate a seizure even where a person did not attempt to leave include the threatening presence of several officers, the display of a weapon, some physical touching of the person by law enforcement, or the use of language or tone of voice indicating compliance with the officer's request is required. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

As to the first two circumstances Walker identifies (time and lack of "other persons") Walker provides no cogent argument why the officer approaching her and asking questions was outside the realm of a consensual encounter, which she conceded to the trial court was constitutionally appropriate. As for the officer's tone of voice, the district court found, and we agree, that the officer's tone was "friendly" and "decidedly nonconfrontational." This leaves Walker's assertion that a reasonable person in her position would not feel free to leave because of the officer's "accusatory" questions that "would have conveyed to any reasonable person that ignoring the officer was not an option." Walker does not, however, identify what "accusatory" questions converted the consensual encounter into a detention. Nor is there any evidence in the record that the officer directed Walker's movements or required her to remain before the officer had a basis for doing so--to confirm that Walker actually had a valid license and to investigate whether Walker was driving under the influence. Walker has failed to meet her burden of showing an unlawful seizure.

## IV.

## CONCLUSION

The district court did not err by concluding that Walker was not unlawfully seized. Thus, Walker has failed to show that the district court erred in denying her motion to suppress. Accordingly, Walker's judgment of conviction for possession of a controlled substance and misdemeanor DUI is affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.

7