88 P.3d 1226

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Richard Jack LANDRETH,
Defendant–Appellant.**

No. 29399.

Court of Appeals of Idaho.

March 12, 2004.

Review Granted May 6, 2004.

Molly J. Huskey, State Appellate Public Defender, Boise; Christopher D. Schwartz, Legal Aid Clinic, Moscow, for appellant. Christopher D. Schwartz, Legal Intern, argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

WALTERS, Judge Pro Tem.

Richard Jack Landreth appeals from the judgment of conviction entered by the district court after a jury found him guilty of drug-related charges. We affirm.

## I.

## FACTS AND PROCEDURE

At approximately 3:30 a.m. on March 17, 2002, an employee of a grocery store in Coeur d'Alene contacted police to report a suspicious vehicle moving from parking space to parking space in the grocery store's parking lot. The vehicle was described as a light-colored truck and was last seen parked next to a red van. An officer drove to the parking lot, observed a light-colored truck next to a red van, and stopped to talk with the driver. While walking to the truck, the officer observed an orange extension cord running from the hood of the truck to the wall of the grocery store. The officer asked the driver if everything was all right, what he was doing there, how he got there, and who he was. The driver responded that all was well, that he was waiting for his battery to get warm, that the employees of the grocery store knew he was there, and that he had come from a friend's house. The driver produced his driver's license upon the officer's request for identification. The officer matched the picture to the driver, Landreth, and gave the pertinent information to dispatch to run a driver's query. During their conversation, Landreth told the officer that he was wanted on an arrest warrant. A few minutes after the officer contacted dispatch, dispatch informed the officer that Landreth had an outstanding warrant for his arrest. Landreth was arrested and searched incident to his arrest. A small red bindle of methamphetamine fell from Landreth's pocket during the search. Inside the truck, officers found methamphetamine, marijuana, and drug paraphernalia. As a result, Landreth was charged with possession of methamphetamine, I.C. § 37–2732(c)(1); possession of marijuana, I.C. § 37–2732(c)(3); and possession of drug paraphernalia, I.C. § 37–2734A.

Prior to trial, Landreth filed a motion to suppress the evidence found during the search incident to his arrest, claiming that his brief detention while the officer ran a driver's query violated his Fourth Amendment right to be free from unreasonable searches and seizures. The district court

denied the motion, holding that, under *State v. Godwin,* 121 Idaho 491, 826 P.2d 452 (1992), the very minimal intrusion was justified under the circumstances. A jury found Landreth guilty of all three charges. Landreth appeals from his judgment of conviction arguing that the district court erred when it denied his motion to suppress.

## II.

## ANALYSIS

Landreth argues that his motion to suppress should have been granted because there was no legal justification for briefly detaining him to run the driver's query, thus tainting the evidence found as a result of the search incident to his arrest. Specifically, Landreth asserts that the officer lacked reasonable suspicion that criminal activity was afoot as required to effectuate an investigatory stop. Landreth also contends that the brief detention was not justified in light of the police community caretaker function because Landreth needed no assistance. The state argues that the discovery of the outstanding arrest warrant dissipated any taint of the evidence caused by the detention.

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999). When a search or seizure is conducted pursuant to a warrant, the defendant must prove, by a preponderance of the evidence, that his or her constitutional rights were violated by the search or seizure. *State v. Northover,* 133 Idaho 655, 658, 991 P.2d 380, 383 (Ct.App. 1999).

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Ferreira,* 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). A search incident to a valid arrest is among those exceptions and, thus, does not violate the Fourth Amendment proscription against unreasonable searches. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Moore,* 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct.App.1996). Landreth does not challenge the validity of the warrant for his arrest. Instead, Landreth asserts that the evidence obtained from the search was tainted because he was illegally detained when the officer obtained Landreth's license, ran the driver's query and thereby discovered the warrant.

In support of his argument, Landreth relies on *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). In *Brown,* a case not involving the suppression of evidence but rather the constitutionality of a criminal statute, the United States Supreme Court found unconstitutional a Texas statute that made it a criminal act for a person to refuse to give his name and address to an officer upon the officer's request for such information. The underlying facts in *Brown* showed that the officer had observed Brown and another man walking away from one another in an alley in an area with a high incidence of drug traffic. Because the situation looked suspicious and the officer had never seen Brown in that area before, the officer stopped Brown and asked him to identify himself and explain what he was doing. The officer did not claim to suspect Brown of any specific misconduct, nor did he have any reason to believe that Brown was armed. When Brown refused to provide identification, the officer arrested him for the statutory violation. The Court held that detaining Brown for the purpose of having Brown identify himself constituted a seizure of his person subject to the requirement of the Fourth Amendment that the seizure be "reasonable."

The Court recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have "probable cause" to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. *Id.* at 51, 99 S.Ct. 2637. The Court found Brown's seizure was without reasonable justification, while acknowledging: "We need not decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements." *Id.* at 53 n. 3, 99 S.Ct. 2637 n. 3.

Subsequent to *Brown*, the Court has had occasion to address other encounters between police and citizens. For instance, *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), involved the search of an airline passenger in an airport. The defendant had argued that she was illegally detained by DEA officers when they stopped her in the concourse and asked her to accompany them to an office where they questioned her, asked for identification, and subsequently obtained her consent to a search of her person. The search produced packets of heroin in the defendant's undergarments. In upholding the search, the Court said:

> We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

*Id.* at 554, 100 S.Ct. 1870 (citation omitted). Notably, in *Mendenhall*, although the officers took possession of the defendant's driver's license as a form of identification offered to them by the defendant and later returned the license to her, the Court did not suggest that the taking of the license was a form of "seizure" of the defendant.

*Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984), also involved a search in an airport. The underlying facts showed that the officers noticed the defendant and two other individuals behaving "in an unusual manner" while leaving the National Airlines ticket counter in the Miami Airport. The officers approached the group and asked Rodriguez if they might talk. At the officer's suggestion, they moved about fifteen feet and after further discussion concerning his identity, Rodriguez consented to a search of his luggage, where the officers found cocaine. The officers then arrested Rodriguez and the other two men. As in *Mendenhall*, the Court upheld the search. In so doing, the Court commented, "the initial contact between the officers and [Rodriguez], where they simply asked if he would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest." *Id.* at 5–6, 105 S.Ct. 308. The Court went on to say: "Assuming, without deciding, that after [Rodriguez] agreed to talk with the police, moved over to where his cohorts and the other detective were standing, and ultimately granted permission to search his baggage, there was a 'seizure' for purposes of the Fourth Amendment, we hold that any such seizure was justified by 'articulable suspicion.'" *Id.* These cases demonstrate that a seizure, for Fourth Amendment purposes, occurs when a reasonable person would have believed that he or she was not free to leave when the police make an effective show of authority.

The objective standard used by the Court has been applied most recently to bus "sweeps" in which officers board a bus, ask questions of passengers, and request permission to search baggage. Avoiding a bright-line rule that such activity necessarily constitutes a seizure, the Court instead reaffirmed its usual standard:

> Our cases make it clear that a seizure does not occur simply because a police officer

approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

*Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In sum, a request for identification or mere questioning is not enough, by itself to constitute a seizure. *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

■ Prompt inquiry into suspicious or unusual street activity is an indispensable police power in the orderly government of urban communities. *State v. Hobson*, 95 Idaho 920, 523 P.2d 523 (1974), *citing State v. Loyd*, 92 Idaho 20, 23, 435 P.2d 797, 800 (1967). Indeed:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)*] recognizes that it may be the essence of good police work to adopt an intermediate response.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

The Idaho Supreme Court has determined that a police officer's brief detention of a driver to run a status check on the driver's license, after making a valid, lawful contact with the driver, is reasonable for purposes of the Fourth Amendment. *See Godwin*, 121 Idaho at 495, 826 P.2d at 456. In *Godwin*, an Idaho State Police officer stopped a vehicle because of an equipment violation. During the stop, another vehicle, driven by Godwin, stopped on the roadside one hundred yards in front of the first vehicle. While the state police officer spoke with the driver of the first vehicle, a Bonner County deputy sheriff stopped behind Godwin's vehicle. The two vehicles were traveling together and the driver of the first vehicle thought her driver's license was in Godwin's vehicle. However, Godwin was unable to locate the license. The deputy asked to see Godwin's license and returned to his patrol car to conduct a driver's license check. Dispatch informed the deputy that Godwin's license was suspended, after which Godwin was arrested. A search of Godwin's vehicle incident to the arrest revealed plastic bags containing cocaine.

Godwin was charged with possession of cocaine with intent to deliver. Prior to trial, Godwin filed a motion to suppress the evidence, which was denied. After conditionally pleading guilty to possession of cocaine, Godwin appealed, claiming that the district court erred when it denied his motion to suppress. This Court affirmed, *State v. Godwin*, 121 Idaho 517, 826 P.2d 478 (Ct. App.1991), and Godwin obtained review by the Idaho Supreme Court. The Supreme Court held that: a limited seizure occurred when the deputy took Godwin's license and told him to remain in his vehicle; substantial public interests, including the officer's need to positively identify the person with whom he was dealing, outweighed the minimal police intrusion; the Idaho statute authorizing officers to demand display of a driver's license, I.C. § 49–316, includes the authority to run a status check on the license; an officer's brief detention of a driver to run a status check, after making a valid, lawful contact with the driver, is reasonable for purposes of the Fourth Amendment; and the holding did not authorize police to exercise unfettered discretion by randomly stopping motorists and requesting display of a driver's license. *Godwin*, 121 Idaho at 495–96, 826 P.2d at 456–57.

■ Landreth has failed to demonstrate any pertinent distinction between *Godwin* and the facts of this case. Here, the officer

testified that an employee of the grocery store reported to dispatch suspicious circumstances regarding a vehicle in the parking lot. Dispatch then contacted the officer for an investigation of the situation. As in *Godwin*, the officer in this case did not initiate the stop. Instead, Landreth was already parked and eating food in his truck, with an electric cord connecting his truck to the grocery store. The officer stated that, when he arrived at the scene, he did not see illegal activity, but clarified that the extension cord running from the truck to the grocery store was unusual. The officer was unsure if Landreth had permission to use the grocery store electrical outlet to warm his truck's battery, giving rise to the possibility of theft of services. However, upon questioning, the officer was told by Landreth that those in the grocery store knew him and knew what he was doing. The officer requested identification and was given a driver's license. The officer then ran a brief driver's license query through dispatch, which revealed the outstanding warrant for Landreth's arrest.

Under these circumstances, Landreth has failed to show that the officer's initial contact with him was unlawful or invalid. Landreth was already stopped in the parking lot and willingly spoke with the officer. The contact to this point was consensual, not a detention. Landreth also has not demonstrated that the brief detention for a license check was unreasonable. As discussed previously, an officer's brief detention of a driver to run a status check on the driver's license, after making a valid, lawful contact with the driver, is reasonable for purposes of the Fourth Amendment.

We caution that our decision does not countenance officers initiating "consensual contacts" with individuals merely in order to follow that contact with a request for identification to run a license check or a warrants check. Such a law enforcement tactic would run afoul of the Supreme Court decision in *Brown*, discussed above. Here, however, the officer had a legitimate reason to make contact with Landreth, even though that reason may not have amounted to reasonable suspicion that would have justified a detention at the outset of the encounter.

Because of our holding that the officer could properly detain Landreth to run a driver's license check after a legitimate consensual encounter, we need not determine whether the detention was justified under the police community caretaker function. Additionally, we do not address the state's alternative theory that the discovery of the valid arrest warrant dissipated any taint of the evidence arising from the detention.

## III.

## CONCLUSION

Based on the foregoing, Landreth has failed to show that the district court erred when it denied his motion to suppress the evidence found incident to his arrest. Landreth's judgment of conviction is affirmed.

Chief Judge LANSING and Judge GUTIERREZ, concur.