# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47024

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

DAVID CHARLES ANDERSON,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: October 14, 2020

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott Wayman, District Judge.

Order denying motion to suppress, <u>reversed</u>; judgment of conviction, <u>vacated</u>; and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

David Charles Anderson appeals from the district court's judgment of conviction. Anderson alleges the district court erred in denying his motion to suppress evidence of methamphetamine that was found in his vehicle after an officer retained Anderson's driver's license to check if Anderson had any outstanding arrest warrants. Anderson contends the district court erred by finding that the retention of his license was not a seizure and therefore not subject to the Fourth Amendment's reasonableness requirement. We hold the district court erred in denying the motion to suppress. Accordingly, the denial of the motion to suppress is reversed, the judgment of conviction is vacated, and the case is remanded.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol, Officer Herbig was seated in his parked patrol car in a parking area near a bus stop. He was not investigating a report of any suspicious activity in the area, nor did he suspect that anyone in the area was currently committing or about to commit a crime. Nevertheless, he approached the driver's side of a truck that was parked in the same area. Without being prompted, Anderson, who was seated in the driver's seat of the truck, rolled down the driver's side window.

The district court found as follows: Officer Herbig asked Anderson if he was waiting for someone, and Anderson explained he was waiting for his girlfriend to arrive so he could give her a ride home before he went to work. Anderson was wearing the uniform associated with a local fast food restaurant. Officer Herbig asked Anderson if he had his identification on him, and Anderson responded "yes." Officer Herbig then asked Anderson if he could see his identification. Anderson handed the officer his driver's license. Officer Herbig took the license, examined it, called in the name and information to police dispatch, and then handed the license back to Anderson. Shortly thereafter, Officer Herbig received word from dispatch that Anderson was on probation. Officer Herbig asked Anderson if he was still on probation and Anderson said that he was. Officer Herbig then asked why he was on probation, and Anderson responded that he was on probation for a possession of methamphetamine charge from about two years earlier. Officer Herbig questioned Anderson about his prior drug use and asked for the name of his probation officer. Officer Herbig then asked Anderson if he could search him so "I can tell your probation officer that you're good." Anderson consented to the search of his person and stepped out of the truck. After conducting the search, Officer Herbig asked if he could search Anderson's car. Anderson again agreed. While searching the truck, Officer Herbig found a small bag of methamphetamine.

Anderson was charged with possession of a controlled substance. He filed a motion to suppress the evidence, arguing that Officer Herbig's retention of Anderson's driver's license to run a warrants check without any constitutionally-reasonable justification for doing so violated his Fourth Amendment right against unreasonable seizure. Anderson further argued that the discovery of the drugs in his truck was a direct result of Officer Herbig's alleged constitutional violation and was the fruit of the poisonous tree, thereby mandating its exclusion. The district

court denied the motion to suppress, finding that Officer Herbig's retention of Anderson's driver's license did not amount to a detention that required reasonable suspicion because Anderson consented to Officer Herbig's request for his license. Anderson entered a conditional guilty plea to possession of a controlled substance, reserving his right to appeal the denial of the motion to suppress. Anderson timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal Anderson argues the district court erred in denying his motion to suppress because Officer Herbig retained Anderson's driver's license, which amounted to an unreasonable seizure in violation of the Fourth Amendment. The State contends that no seizure occurred, but if there was a seizure, it was reasonable, and thus, the district court did not err in denying Anderson's motion to suppress.

### A. Anderson Was Seized When Officer Herbig Took and Examined Anderson's License and Ran Anderson's Information Through Dispatch

This Court is presented with the question of whether Officer Herbig's taking, holding, and examining Anderson's driver's license, as well as running the information therein, constituted a seizure of Anderson. If so, the next question is whether it was unreasonable and violative of the Fourth Amendment. The district court found the retention of Anderson's license was not an unreasonable seizure and thus, did not violate the Fourth Amendment, holding: "I find that the defendant voluntarily consented to the driver's license being handed to the officer upon his request. I don't think that that was an unreasonable request or that it constituted an

3

unlawful detention because it was done with the consent of the defendant." This Court disagrees.

The Fourth Amendment to the United States Constitution guarantees the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). The Idaho Supreme Court and this Court have held that a seizure occurs when an officer retains a valid driver's license or other paperwork of value. *See State v. Godwin*, 121 Idaho 491, 493, 826 P.2d 452, 454 (1992) ("[A] limited seizure occurred when [the officer] took Godwin's license and told him to remain in his car." ); *State v. Martinez*, 136 Idaho 436, 439, 34 P.3d 1119, 1122 (Ct. App. 2001) ("A limited seizure occurs when an officer takes a driver's license."); *State v. Osborne*, 121 Idaho 520, 524, 826 P.2d 481, 485 (Ct. App. 1991) ("Osborne was 'seized' within the meaning of the Fourth Amendment when [the deputy] took his license.").

The State argues that because Officer Herbig did not take Anderson's license back to his patrol car to run a warrant check, but instead remained outside Anderson's car while he radioed in Anderson's information, a seizure did not occur. This Court is not persuaded. Under the circumstances of this case, this Court holds that Anderson was seized when Officer Herbig took and examined Anderson's license and then ran the information through dispatch.

**B.   Officer Herbig's Retention of Anderson's License Was an Unreasonable Seizure in Violation of the Fourth Amendment**

Having determined a seizure occurred, we must determine whether the seizure was reasonable. The district court held that Anderson voluntarily consented to his driver's license being handed to Officer Herbig and therefore, no unlawful detention occurred. Anderson contends that because Officer Herbig lacked reasonable suspicion that Anderson was engaging in wrongdoing, Officer Herbig's retention of Anderson's driver's license amounted to an unreasonable seizure that violated Anderson's Fourth Amendment rights. In response, the State argues that if a seizure did occur, it was reasonable because the contact between Officer Herbig and Anderson was consensual.

4

The "reasonableness of such seizures [brief detentions short of traditional arrest] depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Godwin*, 121 Idaho at 495, 826 P.2d at 456 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).

In some circumstances, a brief or limited seizure of a driver to run a status check of the driver's license, "after making a valid, lawful contact with the driver," is reasonable. *Godwin*, 121 Idaho at 491, 826 P.2d at 456. For example, in *Godwin*, the Idaho Supreme Court considered whether a constitutionally reasonable seizure occurred when officers retained the defendant's driver's license to run a warrants check after making lawful contact with the defendant. *Id.* at 496, 826 P.2d at 457. Godwin had stopped his vehicle on the side of the road to wait for another driver who had been stopped by the police. *Id.* at 491, 826 P.2d at 452. The driver of the first vehicle told the officer that she believed her license was in Godwin's vehicle. *Id.* at 492, 826 P.2d at 453. After Godwin was unable to locate the other driver's license, a second officer requested to see Godwin's license. *Id.* The officer returned to his patrol car and ran a warrants check, which revealed that the defendant's license was suspended. *Id.* Godwin was subsequently arrested and a search of his vehicle revealed bags of cocaine. *Id.* Godwin moved to suppress the evidence obtained during the search, and the district court denied the motion. *Id.*

In a plurality decision, the Idaho Supreme Court recognized that a seizure occurred when the officer took Godwin's license and told him to remain in the car, and that the seizure was reasonable. *Id.* at 493, 826 P.2d at 454. The Court found that the officer's initial contact with Godwin was lawful and that the request to see Godwin's license was valid, particularly in light of the officers' discovery that the person traveling with Godwin was driving without a license. *Id.* at 495, 826 P.2d at 456.

However, Justice McDevitt, in joining with the majority in finding Godwin's detention was reasonable, wrote separately to note that: "A 'motorist assist' stop by a police officer, with no other factual predicate for inquiry, would not, in this writer's opinion, justify a demand for identification of the driver or occupants of the vehicle involved." *Id.* at 496, 826 P.2d at 457.

Reading Justice McDevitt's concurrence with the opinion of the other two justices, the plurality opinion agreed that a "factual predicate for inquiry" would justify a demand for the driver's identification. *Id.* at 496, 826 P.2d at 457. The factual predicate was the officer's

testimony that he contacted Godwin to determine if Godwin needed assistance and the officer was concerned for the other officer involved in the stop of the other vehicle. *Id*. at 495, 826 P.2d at 456.

A similar conclusion was reached in *State v. Landreth*, 139 Idaho 986, 990, 88 P.3d 1226, 1230 (Ct. App. 2004). This Court applied *Godwin* to conclude that the detention of an individual to run a warrants check was reasonable, so long as the officer has a legitimate reason to initiate contact with the individual. *Landreth*, 139 Idaho at 991, 88 P.3d at 1231. There, an officer was responding to a report of suspicious activity in the parking lot of a grocery store when he observed Landreth sitting in a car and noticed an extension cord running from Landreth's car to the store. *Id.* at 987, 88 P.3d at 1227. The officer approached Landreth, requested his identification, and questioned him. *Id.* Landreth responded that he was warming his battery and gave the officer his driver's license. *Id.* The officer radioed the information from the license to dispatch and was informed that Landreth had an outstanding warrant for his arrest. *Id.* The officer then arrested Landreth and conducted a search incident to arrest, during which a small amount of methamphetamine fell from Landreth's pocket. *Id.* Inside Landreth's truck, officers found methamphetamine, marijuana, and drug paraphernalia. *Id.* Landreth was charged with possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. *Id.* Prior to trial, Landreth filed a motion to suppress, claiming the brief seizure which occurred when the officer retained his license was a violation of his Fourth Amendment rights. *Id.* The district court denied the motion. *Id.* at 987-88, 88 P.3d at 1227-28.

On appeal in *Landreth*, this Court found the seizure to be reasonable under the circumstances because the officer had a "legitimate reason" to make contact with Landreth based on the call from a store employee about the suspicious circumstances surrounding Landreth running a power cord from his vehicle to the store. *Id.* at 991, 88 P.3d at 1231. Nonetheless, we wrote: "We caution that our decision does not countenance officers initiating 'consensual contacts' with individuals merely in order to follow that contact with a request for identification to run a license check or a warrants check." *Id.*

Consistent with the holdings in *Godwin* and *Landreth* is this Court's holding in *Osborne* that a person may not be seized, even briefly, without reasonable, objective grounds for doing so. *Osborne*, 121 Idaho at 525, 826 P.2d at 486. In *Osborne*, officers noticed a pick-up truck parked along the road in front of a vacant schoolhouse. *Id.* at 522, 826 P.2d at 483. The schoolhouse sat

6

on a hill overlooking a lumberyard, which was approximately three hundred feet away. *Id.* at 523, 826 P.2d at 484. The officers saw Osborne standing behind the truck and a female sitting in the passenger's seat. *Id.* at 522, 826 P.2d at 483. The truck's engine was running and the driver's door was open. *Id*. Earlier that evening the officers had received a report of someone shooting out lights at the lumber yard. *Id.* at 522-23, 826 P.2d at 483-84. There also had been reports, some months earlier, of children playing on the school's roof. *Id*. at 523, 826 P.2d at 484. The officers drove towards and parked behind the truck. *Id.* Meanwhile, Osborne got into the driver's side of the truck and closed the door. *Id.* One of the officers walked up to the truck and asked for Osborne's driver's license. *Id.* The officer returned to his patrol car with the license to run a radio check. *Id.* Osborne was ultimately arrested for driving under the influence of alcohol. *Id.* On appeal, this Court held that a seizure occurred when the officer took Osborne's license and that the seizure was unreasonable because the record lacked any evidence to support a suspicion that Osborne was violating the law or that Osborne had committed or was about to commit a crime at the time the officers initiated contact with him. *Id.* at 524, 526, 825 P.2d at 485, 487.

This case is more like *Osborne* than *Landreth* or *Godwin*. Unlike *Landreth*, Officer Herbig was not responding to a report of suspicious activity in the area, nor was he responding to a report of suspicious activity relating to Anderson. There was no readily apparent circumstance--such as an extension cord running from a car to a grocery store--that heightened Officer Herbig's suspicions. Unlike *Godwin*, Officer Herbig did not approach Anderson because of another related lawful traffic stop. Moreover, there was even less reason to detain Anderson than there was for the officers to detain Osborne as the record is devoid of evidence to support any reasonable suspicion that Anderson was engaging in unlawful activity or that any unlawful activity had occurred in the geographic area of Anderson's parked vehicle.

Officer Herbig had no suspicion that Anderson was engaged in or about to engage in criminal activity, had not received any reports regarding suspicious activity in the area, and lacked any genuine and warranted concern particularized to Anderson. Despite the lack of any justification, Officer Herbig initiated contact with Anderson, detained him, and then ran his information through dispatch solely because his department encourages its officers to identify people with whom they talk. Taking someone's driver's license to identify the person in the absence of genuine and warranted concern by the officer is the type of behavior prohibited by

7

*Godwin* and *Osborne* and what this Court specifically cautioned against in *Landreth*. This case demonstrates a circumstance where if Anderson's "right to personal security free from arbitrary interference by law officers is to mean anything at all," then Anderson's rights should outweigh the interests of the government. Under the facts of this case, we find that the seizure was unreasonable, resulting in a violation of Anderson's Fourth Amendment rights. Evidence obtained in violation of the Fourth Amendment generally may not be used at trial against the victim of the search. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Because the evidence found in Anderson's vehicle was the result of the unlawful seizure, the evidence must be suppressed. Consequently, the district court's denial of Anderson's motion to suppress is reversed.

## IV.

## CONCLUSION

Officer Herbig's retention of Anderson's license amounted to an unreasonable seizure in violation of Anderson's Fourth Amendment rights. The district court erred when it denied the motion to suppress the evidence found in Anderson's car. Accordingly, the denial of Anderson's motion to suppress is reversed and the judgment of conviction is vacated. The case is remanded for further proceedings consistent with this opinion.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.